Citation Nr: 1518730 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 13-10 488 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to service connection for type II diabetes mellitus, to include as due to herbicide exposure, on the basis of substitution.

2. Entitlement to an initial evaluation in excess of 70 percent for posttraumatic stress disorder (PTSD), on the basis of substitution.

3. Entitlement to service connection for paroxysmal atrial fibrillation, claimed as ischemic heart disease and a heart condition, on the basis of substitution.

4. Whether new and material evidence has been received to reopen a claim of entitlement to service connection for liver problems, to include cirrhosis and hepatitis C, on the basis of substitution.

5. Entitlement to a total disability evaluation based upon individual unemployability due to service-connected disabilities (TDIU), on the basis of substitution.


REPRESENTATION

Appellant represented by: John R. Worman, Attorney


ATTORNEY FOR THE BOARD

K. Osegueda, Associate Counsel



INTRODUCTION

The Veteran served on active duty from February 1965 to June 1969. His awards and decorations included the Vietnam Service Medal with two stars, the Vietnam Campaign Medal, and the Combat Action Ribbon. The appellant is the Veteran's surviving spouse. 

This matter initially came to the Board of Veterans' Appeals (Board) on appeal from rating decisions by the Department of Veterans Affairs (VA) Regional Office in Winston-Salem, North Carolina. 

In an April 2010 rating decision, the RO denied the claim for service connection for type II diabetes mellitus. In October 2010 and January 2011 rating decisions, the RO reconsidered the Veteran's claim for service connection for diabetes mellitus; however, it denied the claim in both rating decisions. The Veteran submitted a notice of disagreement (NOD) with the January 2011 rating decision, and the RO issued a statement of the case (SOC) in December 2012. The Veteran later filed a VA Form 9 in March 2013, and the RO certified the issue to the Board. Percy v. Shinseki, 23 Vet. App. 37, 45 (2009).

In a September 2013 rating decision, the RO denied an initial evaluation in excess of 70 percent for PTSD, denied service connection for paroxysmal atrial fibrillation, determined that new and material evidence had not been received to reopen claims of entitlement to service connection for cirrhosis of the liver and hepatitis C, and denied entitlement to TDIU. The Veteran appealed this decision; however, he died before a statement of the case (SOC) was issued as to these issues.

In December 2014, the Board dismissed the appeal due to the death of the Veteran and informed the appellant that she could file a request to be substituted as the appellant for purposes of the processing the claims to completion. Later that month, the appellant requested substitution for the claims pending at the time of Veteran's death. In January 2015, the RO recognized the appellant as a valid substitute claimant in place of the Veteran for the issues on appeal. Accordingly, the appellant has been substituted as the claimant for the purposes of all claims that were pending on the date of the Veteran's death. The issues on appeal have been recharacterized on the title page to reflect substitution. 

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record.

In addition to the VBMS claims file, there is a Virtual VA paperless file associated with the appellant's case. A review of the documents in the Virtual VA file reveals documents that are duplicative of the evidence in the VBMS file.

The issues of entitlement to an initial evaluation in excess of 70 percent for PTSD, entitlement to service connection for paroxysmal atrial fibrillation, whether new and material evidence has been received to reopen claims of entitlement to service connection for cirrhosis of the liver and hepatitis C, and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).



FINDINGS OF FACT

1. The Veteran is presumed to have had exposure to herbicide agents during his military service in the Republic of Vietnam.

2. The Veteran was diagnosed with type II diabetes mellitus during his lifetime, and there is insufficient evidence to rebut the presumption that the disorder was related to his herbicide exposure in service.


CONCLUSION OF LAW

The Veteran's diabetes mellitus is presumed to have been incurred in service. 38 U.S.C.A. §§ 1110, 1112, 1113,1116, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA regulations provide that a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam era shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that such veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307(a)(6)(iii) (2014). 

Service in the Republic of Vietnam includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 U.S.C.A. § 101(29)(A); 38 C.F.R. §§ 3.307(a)(6)(iii), 3.313(a); see also Haas v. Peake, 525 F.3d 1168 (Fed. Cir. 2008), cert. denied, 129 S.Ct. 1002 (2009) (holding that a veteran must have actually set foot within the land borders of Vietnam or been present in the inland waters of Vietnam to be entitled to presumptive service connection).

VA regulations further provide that, if a veteran was exposed to an herbicide agent during active military, naval, or air service, certain enumerated diseases shall be service connected if the requirements of 38 U.S.C.A. § 1116, 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service and it manifests to a compensable degree at any time after service. 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307(a)(6), 3.309(e). However, this presumption of service connection may be rebutted by affirmative evidence to the contrary. 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d). The enumerated diseases which are deemed to be associated with herbicide exposure include type II diabetes mellitus. See 38 C.F.R. § 3.309(e).

As a preliminary matter, the Board acknowledges that the Veteran's period of active duty from February 1965 to June 1969 included service in the Republic of Vietnam. Thus, the Veteran had active service in the Republic of Vietnam during the Vietnam era and is presumed to have been exposed to herbicides during such service. 

Moreover, the record on appeal shows that the Veteran was diagnosed as having type II diabetes mellitus, which is one of the diseases presumed to be associated with herbicide exposure. See 38 C.F.R. § 3.309(e). Therefore, a presumption of service connection for diabetes mellitus attaches in this case. 

The Board does note that the law granting a presumption to service connection for type II diabetes mellitus may be rebutted. 

Historically, post-service private treatment notes indicate that, in July 2000, the Veteran underwent a liver transplant due to hepatitis C and cirrhosis secondary to alcoholism. Thereafter, he was prescribed Prograf, an anti-rejection medication.

In this case, there are conflicting opinions as to whether the Veteran's diabetes mellitus was caused by or a result of his liver transplant, anti-rejection medications, alcohol abuse, and obesity. Following an April 2010 VA examination, the examiner diagnosed the Veteran with uncontrolled type II diabetes mellitus secondary to alcoholism, a liver transplant, and obesity. In a January 2011 VA addendum opinion, the examiner opined that the Veteran's alcoholism was the major contributing factor in causing his diabetes mellitus and that his obesity further caused insulin resistance and aggravated his diabetes mellitus. Moreover, the examiner noted that a liver transplant did not replace the damage to the pancreas after many years of alcohol abuse. Further, the examiner related that many organ transplant specialists believed that organ transplants themselves may contribute to diabetes. 

However, in May 2010 correspondence, a private internal medicine physician stated, "Interestingly, [the Veteran] actually had evidence of glucose intolerance prior to his liver transplant in February of 2000 and this has since remained essentially stable/slightly progressed to the point of being officially diagnosed with type 2 diabetes on [July 8, 2009]." He noted that the Veteran reported that he developed hypoglycemia when he began taking Amaryl and that there was a question as to whether the Prograf caused his high hyperglycemia or type II diabetes mellitus. The physician related that the Veteran had very low-grade proteinuria at the time, which was "actually quite reassuring given the fact that he has likely had glucose intolerance for over 10 years now." The physician noted that the Veteran had a history of chronic Prograf use since 2000. He diagnosed the Veteran with proteinuria, likely secondary to the calcineurin inhibitor, and type II diabetes mellitus. He also provided the following opinion:

We cannot justify the Prograf causing hyperglycemia as again, glucose intolerance was noted prior to the transplantation and we would expect a progression as [the Veteran] has manifested, as part of the expected progression of this disease. We would have expected far worsened hyperglycemia in the face of calcineurin inhibitor with examples including patients requiring insulin if they were glucose intolerant or much more difficult to control glucose in the face of an undiagnosed diabetic. Again, the earliest record we have of glucose intolerance dates back to February 26, 2000 at 115 and February 27, 2000 at 120 which predates his liver transplant, therefore it is unlikely related to his Prograf use at this time.

In May 2010 correspondence addressed to the Veteran, including a private laboratory report, the interpreting physician noted that the Veteran's urinalysis showed an extremely low level of protein in the urine sample, which was expected due to Prograf and "having blood sugar issues prior to your liver transplant."

Further, in an October 2010 private opinion, an internal medicine physician related that the Veteran's diabetes mellitus diagnosis was not triggered by his transplant medications. However, in a November 2010 private opinion, the internal medicine physician stated that, after reviewing the Veteran's laboratory results, he was unable to find any evidence of the presence of diabetes mellitus prior to the Veteran's liver transplant.

Based on the foregoing, the Board finds that there is not clear, affirmative evidence rebutting the presumption of service connection for type II diabetes mellitus based on herbicide exposure. Rather, there is conflicting evidence as to whether the Veteran's diabetes mellitus was related to other causes. Simply put, the January 2011 VA examiner's opinion is insufficient to rebut the presumption. 

Accordingly, the Board resolves all reasonable doubt in the appellant's favor and finds that service connection for type II diabetes mellitus is warranted. See Wise v. Shinseki, 26 Vet. App. 517, 531 (2014) ("By requiring only an 'approximate balance of positive and negative evidence' the Nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding ... benefits."); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Subject to the provisions governing the award of monetary benefits, service connection for type II diabetes mellitus, on the basis of substitution, is granted.


REMAND

In July 2014, prior to his death, the Veteran expressed disagreement with a September 2013 rating decision which denied an initial evaluation in excess of 70 percent for PTSD, denied service connection for paroxysmal atrial fibrillation, determined that new and material evidence had not been received to reopen claims of entitlement to service connection for cirrhosis of the liver and hepatitis C, and denied entitlement to TDIU. However, the RO did not issue a statement of the case (SOC) with regard to these issues. 

Where a notice of disagreement has been filed with regard to an issue, and a SOC has not been issued, the appropriate Board action is to remand the issue for issuance of a SOC. Manlincon v. West, 12 Vet. App. 238 (1999).

Accordingly, the case is REMANDED for the following action:

The AOJ should issue a statement of the case (SOC) addressing the issues of entitlement to an initial evaluation in excess of 70 percent for PTSD, entitlement to service connection for paroxysmal atrial fibrillation, whether new and material evidence has been received to reopen claims of entitlement to service connection for cirrhosis of the liver and hepatitis C, and entitlement to TDIU. 

Thereafter, the appellant should be given an opportunity to perfect an appeal by submitting a timely substantive appeal in response thereto. The AOJ should advise the appellant that the claims file will not be returned to the Board for appellate consideration of these particular issues following the issuance of the SOC unless she perfects his appeal.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
J.W. ZISSIMOS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs